**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

JANE DOE 1 and JANE DOE 2,

               Plaintiffs,

      v.

SAAD EL-DIN RAFIK AL-HARIRI,
BAHAA HARIRI, AYMAN HARIRI,
MOHAMMED HARIRI,
ALI H.KOLAGHASSI, and
HELEN CONLON,

Civil Case No.
1:23-cv-2145

**COMPLAINT**

Plaintiffs Demand aTrial by Jury

Plaintiffs JANE DOE 1 and JANE DOE 2 (hereinafter collectively referred to as "Plaintiffs") by and through their attorneys, DEREK SMITH LAW GROUP, PLLC, hereby complain of Defendants SAAD EL-DIN RAFIK AL-HARIRI (hereinafter referred to as "Defendant S. HARIRI"), BAHAA HARIRI (hereinafter referred to as "Defendant BAHAA"), AYMAN HARIRI (hereinafter referred to as "Defendant AYMAN"), MOHAMMED HARIRI (hereinafter referred to as "MOHAMMED"), ALI H.KOLAGHASSI (hereinafter referred to as "KOLAGHASSI") and HELEN CONLON (hereinafter referred to as "Defendant CONLON") (hereinafter collectively referred to as "Defendants"), upon information and belief as follows:

## PRELIMINARY STATEMENT

This case involves Defendant S. HARIRI's brutal workplace rape of Plaintiff DOE 2, andmultiple instances of false imprisonment, sexual assault, and sexual harassment of both Plaintiffs. Furthermore, it involves the intentional acts of Defendant S. HARIRI's employees and family members who aided and abetted Defendant S. HARIRI's criminal acts. Defendant S. HARIRI, Plaintiffs' former boss at Saudi Oger, the airline that Defendant S. HARIRI owned,

sexually assaulted both Plaintiffs and subjected them to an atmosphere permeated with inappropriate sexual contact,coercion, harassment, and demands for sexual favors. Defendant S. HARIRI abused his position of authority in the airline for his own sexual gratification while repeatedly victimizing both Plaintiffs. Defendants BAHAA, AYMAN, MOHAMMED, KOLAGHASSI and CONLON knew that Defendant S. HARIRI engaged in the above-mentioned criminal behavior and facilitated this unlawful scheme. Moreover, Defendants BAHAA, AYMAN, MOHAMMED, KOLAGHASSI and CONLON took no action to prevent the aforementioned, but rather aided and abetted S. HARIRI's criminal behavior.

## NATURE OF CASE

1. Plaintiffs are seeking declaratory relief and damages to redress the injuries Plaintiffs have suffered as a result of, *inter alia*, rape, sexual assault, sexual harassment, negligence, and aiding and abetting by Defendants.

2. Plaintiffs bring claims for assault and battery, intentional infliction of emotional distress, negligent infliction of emotional distress, Gender Motivated Violence Protection Act, and false imprisonment as claims revived under the Adult Victim's Act.

3. Plaintiffs are seeking compensatory and punitive damages, attorney's fees, and other appropriate legal and equitable relief pursuant to statutory law, common law, and such other relief as the Court deems necessary and proper.

## VENUE AND REVIVED LAWS

4. Jurisdiction of this action is conferred upon this Court as this case involves a Federal Question under 49 U.S.C. §46506, which provides in relevant part: Application of certain criminal laws to acts on aircraft - An individual on an aircraft in the special aircraft jurisdiction of the United States who commits an act that-(1) if committed in the special maritime and territorial

jurisdiction of the United States (as defined in section 7 of title 18) would violate section 113, 114, 661, 662, 1111, 1112, 1113, or 2111 or Chapter 109A of Title 18, shall be fined under title 18, imprisoned under that section or chapter, or both.

5. 49 U.S.C. § 1405 states that: Included in the special aircraft jurisdiction of the United States, while "in flight," are the following: . . (d) any other (i.e., foreign) aircraft outside the United States which: (1) has its next scheduled destination or last point of departure in the United States if the aircraft does, in fact, next land in the United States.

6. Chapter 109A of Title 18 includes violations of 18 U.S. Code § 2241 for aggravated sexual abuse; § 2242. Sexual abuse § 2244; and abusive sexual contact.

7. A civil cause of action exists for violations of the above federal criminal statutes. *See Chumney v Nixon*, 615 F2d 389 [6th Cir 1980].

8. Moreover, when Congress fails to supply a statute of limitations for a federal cause of action, the courts "have generally concluded that Congress intended that the courts apply the most closely analogous statute of limitations under state law." *United Paperworks Int'l Local # 395 v. ITT Rayonier, Inc.,* 931 F.2d 832, 834 (11th Cir.1991) (quoting *Reed v. United Transp. Union,* 488 U.S. 319, 323, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989)).

9. This Court has supplemental jurisdiction over the related state law and local ordinance claims pursuant to 28 U.S.C. § 1367(a) because Plaintiff's claims under New York law form part of the same case or controversy under Article III of the United States Constitution. Plaintiff's state law claims share all common operative facts with Plaintiff's federal law claims, and the parties are identical. The Court also has jurisdiction pursuant to 29 U.S.C. §2617; 28 U.S.C. §1331, §1343 and pendent jurisdiction thereto.

10. This Court has jurisdiction over the action pursuant to New York Constitution, article VI, § 7(a) and CPLR § 301.

11. Additionally, 28 U.S.C. §1331 states that "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

12. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the Eastern District of New York because as described further herein, a substantial part of the events or omissions giving rise to the claims herein occurred in Queens County, State of New York and within the Judicial District for the Eastern District of New York.

13. "The Constitution does not limit venue for in-flight federal crimes to the district sitting directly below a plane at the moment a crime was committed. Such in-flight crimes are covered by 18 U.S.C. § 3237(a) and may be prosecuted in the flight's landing district." *United States v Lozoya*, 982 F3d 648, 657 [9th Cir 2020].

14. "Although the case could be brought in state court—if the state could be identified—pursuant to the state's concurrent jurisdiction, special aircraft jurisdiction eliminates the difficulties that could arise in determining which state's airspace the plane occupied at the time of the incident." *United States v Moradi*, 706 F Supp 2d 639, 644 [D Md 2010].

15. Neither Plaintiff nor Defendant are a resident of the State of New York. Venue is proper in Queens County pursuant to CPLR § 503(a) because a substantial part of the events or omissions giving rise to the claim occurred in Queens County, within the Eastern District of New York.

16. Venue is also appropriate because New York courts' special trial parts are uniquely suited to hear Plaintiff's complaint and provide Plaintiff trial preference as required under the Adult Survivor's Act. These courts have heard thousands of Child Victim's Act cases and are prepared to handle a matter of this kind.

17. The most closely analogous statute of limitations under state law is New York's "Adult Survivor's Act" under Senate Bill S66A (hereinafter referred to as "ASA"), signed by New York Governor Kathy Hochul on May 24, 2022. The ASA extends the statute of limitations for civil rape cases in New York. The ASA allows survivors of sexual abuse to bring expired claims for one (1) year, beginning six (6) months after the effective date and ending one (1) year and six (6) months after the effective date.

18. The effective date of the law is May 24, 2022. Accordingly, Plaintiff files this complaint ten (10) months after the effective date but not more than one (1) year and six (6) months after the effective date.

19. Plaintiffs were the victims of one or more illegal sexual acts and Plaintiffs file this complaint also seeking leave to proceed anonymously under the pseudonym "Jane Doe," asking this Court for permission to proceed using a pseudonym so as to protect their identity. Please see *Doe v. Blue Cross & Blue Shield United of Wisc.,* 112 F.3d 869, 872 (7th Cir.1997) ("fictitious names are allowed when necessary to protect the privacy of ... rape victims, and other particularly vulnerable parties or witnesses"). Additionally, "the public generally has a strong interest in protecting the identities of sexual assault victims so that other victims will not be deterred from reporting such crimes." *Doe No. 2 v. Kolko,* 242 F.R.D. 193, 195 (E.D.N.Y.2006); *see also Doe v. Evans,* 202 F.R.D. 173, 176 (E.D.Pa.2001) (granting anonymity to sexual assault victim). *Doe v Penzato*, CV10-5154 MEJ, 2011 WL 1833007, at *3 [ND Cal May 13, 2011].

## **PARTIES**

20. Plaintiffs, JANE DOE 1 and JANE DOE 2, are seeking damages to redress the injuries Plaintiffs have suffered as a result of, inter alia, rape, sexual assault, sexual harassment, negligence, and aiding and abetting, by Defendants.

21. Plaintiffs are sexual assault victims and are identified herein as JANE DOE 1&2.

22. Plaintiffs are individual women who are residents of Australia and Wales

23. At all times material, Defendant S. HARIRI was and is the owner and proprietor at Saudi Oger.

24. Moreover, Defendant S. HARIRI is a Lebanese-Saudi politician who served as the prime minister of Lebanon from 2009 to 2011 and again from 2016 to 2020.

25. At all times material, Defendant S. HARIRI employed Plaintiffs as Flight Attendants on his personal jet.

26. At all times material, Defendant S. HARIRI had supervisory authority over Plaintiffs regarding their employment.

27. At all times material, Defendant AYMAN was the Deputy General Manager of Saudi Oger.

28. At all times material, Defendant AYMAN had supervisory authority over Plaintiffs regarding their employment.

29. At all times material, Defendant BAHAA was employed by Saudi Oger in an upper management position.

30. At all times material, Defendant BAHAA had supervisory authority over Plaintiffs regarding their employment.

31. At all times material, Defendant MOHAMMED was employed by Saudi Oger in an upper management position.

32. At all times material, Defendant MOHAMMED had supervisory authority over Plaintiffs regarding their employment.

33. Upon information and belief, S. HARIRI, BAHAA, MOHAMMED and AYMAN are all related.

34. At all times material, Defendant KOLAGHASSI was a Senior Vice President at Saudi Oger, as well as a Senior Advisor to Defendant S. HARIRI.

35. At all times material, KOLAGHASSI had supervisory authority over Plaintiffs regarding their employment.

36. At all times material, Defendant CONLON was employed by Defendant S. HARIRI and Saudi Oger as the Crew Manager on Defendant S. HARIRI's aircrafts.

37. At all times material, Defendant CONLON held supervisory authority over Plaintiffs.

## **STATEMENT OF FACTS FOR PLAINTIFF JANE DOE 1**

38. Plaintiff JANE DOE 1 ("DOE 1") was hired by Saudi Oger in 2006.

39. Shortly after being hired by Saudi Oger, Plaintiff DOE 1 was assigned to work on Defendant S. HARIRI's private aircraft.

40. Plaintiff DOE 1's employment included accompanying Defendant S. HARIRI on international trips on his various aircraft.

41. These trips included Defendant S. HARIRI'S plane landing, or taking off from, John F. Kennedy Airport located in the County of Queens within the State of New York.

42. From the beginning of Plaintiff DOE 1's employment, she experienced harassment and intimidation from many of the men onboard Defendant S. HARIRI's flights. These men often made sexually explicit comments about Plaintiff DOE 1 and her female colleagues'

appearances. These men also inappropriately touched and groped female staff members, including but not limited to Plaintiff DOE 1.

43. Plaintiff DOE 1 observed, on numerous occasions, Defendant S. HARIRI's passengers drinking heavily and consuming cocaine while onboard Defendant S. HARIRI's aircraft.

44. Defendant S. HARIRI himself, was often heavily medicated.

45. The use of illicit drugs and Defendant S. HARIRI's medicated state, often exacerbated their inappropriate advances towards female staff.

46. Around 2006, almost immediately after DOE 1 began working on S. HARIRI's aircraft, Plaintiff DOE 1 was sexually assaulted by Defendant S. HARIRI.

47. During a flight from Washington to New York, Plaintiff DOE 1 went alone to Defendant S. HARIRI's private bathroom, while it was unoccupied. Defendant S. HARIRI followed Plaintiff DOE 1 into the bathroom, which was a very small space, and told Plaintiff DOE 1 that he wanted to say "Hello." Defendant S. HARIRI pushed Plaintiff DOE 1 up against the wall of the bathroom and attempted to kiss her by forcing his tongue inside of her mouth. Plaintiff DOE 1 made every effort to push him away and turned her head to one side. Defendant S. HARIRI blocked DOE 1's exit and prevented her from exiting the bathroom. Plaintiff DOE 1 eventually freed herself and went back into the cabin.

48. Plaintiff DOE 1 was significantly distressed and concerned that she was being targeted by Defendant S. HARIRI.

49. Shortly after, Plaintiff DOE 1 spoke to some of her colleagues about the sexual assault by Defendant S. HARIRI that occurred within the private bathroom.

50. Plaintiff DOE 1's colleagues informed her that it was not uncommon for Defendant S. HARIRI to make unwanted sexual advances toward the female crew members.

51. Defendant S. HARIRI's sexual advances persisted and occurred on nearly every flight which Plaintiff DOE 1 worked.

52. On another occasion, after landing in New York but while still on the aircraft, Defendant S. HARIRI approached Plaintiff DOE 1 from behind. Defendant S. HARIRI wrapped his arms around Plaintiff DOE 1 and forcefully grabbed her vagina. Defendant S. HARIRI whispered, "I like you. I'll see you again, very soon."

53. Plaintiff DOE 1 was terrified and suffered severe emotional distress as a result of Defendant S. HARIRI's unwelcome sexual assault.

54. On many occasions while on the tarmac in New York, Defendant S. HARIRI approached Plaintiff DOE 1 from behind, while she was in the galley of the plane, and attempt to unzip her skirt and/or unbutton her blouse.

55. Plaintiff DOE 1 pushed Defendant S. HARIRI away and left the room before he was able to sexually assault her further.

56. In addition, on numerous occasions while in New York, Defendant S. HARIRI forcefully grabbed Plaintiff DOE 1's waist and breasts.

57. Furthermore, on numerous occasions Plaintiff DOE 1 witnessed Defendant S. HARIRI forcefully grab other female colleagues' waists and breasts during flights.

58. Plaintiff DOE 1 frequently observed other female colleagues emerge from Defendant S. HARIRI's bedroom looking disheveled and distressed. When Plaintiff DOE 1 spoke with these women, they told one another that they had been sexually assaulted by Defendant S. HARIRI.

59. Plaintiff DOE 1 spoke with her female colleagues regarding the above and was informed by the female colleagues that they had been sexually assaulted by Defendant S. HARIRI.

60. On one occasion in 2009, Defendant S. HARIRI's aircraft landed in Paris and was greeted by a welcome committee of other diplomats who waited on the tarmac. While the welcome committee waited for Defendant S. HARIRI to disembark, Plaintiff DOE 1 witnessed Defendant S. HARIRI emerge from the bathroom with her colleague, who looked distressed and on the verge of tears.

61. Plaintiff DOE 1's colleague informed Plaintiff DOE 1 that she had just been sexually assaulted by Defendant S. HARIRI as he had forced her to perform oral sex on him in the cabin bathroom.

62. In 2009, Defendant S. HARIRI assaulted Plaintiff DOE 1 while on a flight to New York. Shortly before the plane landed, Defendant S. HARIRI asked Plaintiff DOE 1 to bring him a coffee in his bedroom.

63. Plaintiff DOE 1 felt uncomfortable with this but as requested, went to Defendant S. HARIRI's bedroom, and knocked on the door. Defendant S. HARIRI instructed Plaintiff DOE 1 to come into the room and close the door behind her.

64. When Plaintiff DOE 1 entered the room, Defendant S. HARIRI was seated on his bed wearing only a robe. Plaintiff DOE 1 observed, clearly, that Defendant S. HARIRI was naked underneath the garment as the robe was open and his genitals were exposed.

65. Plaintiff DOE 1 became fearful of being sexually assaulted.

66. Plaintiff DOE 1 quickly delivered the items as Defendant S. HARIRI had requested and attempted to leave the room. Defendant S. HARIRI forcefully grabbed Plaintiff DOE 1 by her blouse, ripping the buttons off, and pulled Plaintiff DOE 1 towards him. DOE 1, panicked and distressed by the unwelcome physical assault and sexual advance, pulled away from Defendant S. HARIRI.

67. DOE 1 was able to free herself and ran out of the bedroom.

68. Thereafter, DOE 1 refused to go into Defendant S. HARIRI's bedroom alone with him.

69. During Plaintiff DOE 1's employment at Saudi Oger, she attempted to speak out about the assaults perpetrated against her by Defendant S. HARIRI.

70. On numerous occasions, Plaintiff DOE 1 reported the incidents to Defendant CONLON, the Crew Manager for Saudi Oger, and Plaintiff DOE 1's direct supervisor.

71. When DOE 1 reported the incidents to Defendant CONLON, Plaintiff DOE 1 was informed "[i]f you want to work in this company you are going to have to learn to suck some dick." Plaintiff DOE 1 was appalled by Defendant CONLON's lewd and egregious instruction.

72. Moreover, Defendant CONLON instructed Plaintiff DOE 1 that it was her job to give Defendant S. HARIRI anything he wanted, to keep quiet about the incidents of sexual assault, and if she was not able to do this, to look for another job.

73. Plaintiff DOE 1 further reported Defendant S. HARIRI's criminal conduct to upper management of Saudi Oger, who were also Defendant HARIRI's family members.

74. Specifically, Plaintiff DOE 1 reported Defendant S. HARIRI's behavior on multiple occasions to Defendant AYMAN HARIRI, the Deputy General Manager of Saudi Oger, and Defendant MOHAMMED HARIRI the Senior Vice President of Saudi Oger.

75. Plaintiff DOE 1 submitted a written complaint to Saudi Oger's Board of Directors (of which AYMAN, MOHAMMED, and KOLAGHASSI were all members) regarding S. HARIRI's unwelcome sexual advances and sexual assaults.

76. In fact, AYMAN was fully aware that Defendant S. HARIRI raped, sexually assaulted, and sexually harassed his female aviation staff.

77. Despite this knowledge AYMAN and MOHAMMED failed to take any action to stop Defendant S. HARIRI. Rather, AYMAN and MOHAMMED took affirmative steps to insulate themselves from being in Defendant S. HARIRI's presence (i.e., they stopped flying on his planes).

78. As a result of BAHAA, AYMAN, KOLAGHASSI and MOHAMMED's intentional acts of ignoring Plaintiff DOE 1's complaints and Defendant S. HARIRI's criminal behavior, Defendant S. HARIRI was able to continue to assault and harass DOE 1, as well as countless other female members of his aviation staff.

79. As a result of BAHAA, AYMAN, KOLAGHASSI and MOHAMMED's blatant disregard for Plaintiff DOE 1's complaints, Plaintiff DOE 1 did not have a viable outlet within the company through which to report the abuse.

80. Furthermore, Plaintiff DOE 1 feared the possible consequences to both her future employment and safety if she reported the abuse externally.

81. In fact, Plaintiff DOE 1 was forced to endure retaliation as a result of her opposition to Defendants' unlawful conduct.

82. By way of example, and by no means, an exhaustive list, Plaintiff DOE 1 was forced to work three (3) straight months, without any time off, after she complained to Defendant CONLON about Defendant S. HARIRI's criminal behavior.

83. Later in 2009, the final incident of sexual abuse perpetrated By Defendant S. HARIRI against Plaintiff DOE 1 took place on another flight from New York to Paris. On this occasion, Defendant S. HARIRI followed Plaintiff DOE 1 into the galley of the plane.

84. While she was alone, Defendant S. HARIRI came up behind Plaintiff DOE 1 and forcefully put his hand underneath her skirt. Defendant S. HARIRI proceeded to grab and squeeze Plaintiff DOE 1's vagina.

85. Notably, Defendant S. HARIRI penetrated Plaintiff DOE 1's vagina with his finger.

86. Plaintiff DOE 1 was shocked, humiliated, distressed, and scared. Plaintiff DOE 1 pushed Defendant S. HARIRI away and quickly left the galley.

87. As a result of this incident, and the constant barrage of unwelcome sexual assaults and advances that had preceded it, Plaintiff DOE 1 decided that she could no longer continue to work at Saudi Oger.

88. Plaintiff DOE 1 resigned from her position with Saudi Oger around 2009 and did not fly on Defendant HARIRI's airline or work for Saudi Oger again.

89. Upon resigning, Plaintiff DOE 1 was informed by a member of the head office of Saudi Oger that she would not receive her final pay for the preceding month and in fact she did not.

90. Further, Defendant CONLON, called and informed Plaintiff DOE 1 that Saudi Oger would make sure that Plaintiff never worked again by blacklisting her within the aviation industry. Defendants also refused to provide Plaintiff DOE 1 a reference.

91. Upon information and belief, Defendants followed through on Defendant CONLON's threats.

92. By way of example, and by no means an exhaustive list, Plaintiff DOE 1 was never given a reference.

93. By way of further example, after she was constructively discharged, Plaintiff DOE 1 applied for another job in the aviation industry.

94. Upon information and belief, Plaintiff DOE 1 was not offered a position with that company due to the fact that Defendant CONLON, as Defendants instruction, had made false statements about Plaintiff DOE 1 when Defendant CONLON was called as a "reference."

95. Plaintiff DOE 1's claims damages for physical, psychological, and other injuries suffered by her as a result of the acts of Defendants.

96. Plaintiff DOE 1 also claims financial losses which are a direct and proximate result of the retaliation by the Defendants due to Plaintiff DOE 1's opposition to Defendants unlawful conduct.

97. As described above, Plaintiff DOE 1 was forced to leave her employment, was not paid for her final month's salary, was informed that she would be "blacklisted" from the industry and was not provided with a reference. This had, and continues to have, a negative impact on Plaintiff DOE's employment and earning potential. Plaintiff DOE has not been employed full time since being constructively discharged from Saudi Oger.

## STATEMENT OF FACTS FOR PLAINTIFF JANE DOE 2

98. Plaintiff DOE 2 began her employment at Saudi Oger around November 2006, at which time she worked on Defendant S. HARIRI's stepmother's aircraft; Madame Nazik Hariri (hereinafter "Madame HARIRI").

99. In addition to Defendant S. HARIRI, BAHAA also subjected DOE 2 to unwelcome sexual advances.

100.   In or around 2006, BAHAA used the services of Saudi Oger to procure "two blondes," as per his request, to accompany him on a flight. What was intended to be a short-term arrangement ended up turning into five (5) weeks. During this time, BAHAA made unwelcome

sexual comments to DOE 2. By way of example only, BAHAA made unwelcome sexual comments about DOE 2's body.

101. Around September 2007, while working on Madame HARIRI's aircraft, Plaintiff DOE 2 was informed that Defendant S. HARIRI would be using Madame HARIRI's aircraft for a trip to Washington D.C., USA, for a state visit with President George W. Bush.

102. Plaintiff DOE 2 was to work on the aircraft for this trip.

103. This trip was the first time Plaintiff DOE 2 had met Defendant S. HARIRI and was also the first time he sexually assaulted her.

104. The flight to Washington, D.C., took place at night and after Defendant S. HARIRI boarded the plane, he went to his bedroom and asked Plaintiff DOE 2 to bring him a bottle of water.

105. When Plaintiff DOE 2 entered Defendant S. HARIRI's bedroom, he was already in bed and Plaintiff DOE 2 could see that he was naked, and his chest was exposed.

106. Plaintiff DOE 2 passed the bottle of water to Defendant S. HARIRI while she attempted to keep her distance. Without warning, Defendant S. HARIRI lunged at Plaintiff DOE 2, violently grabbed her arm, and pulled her towards him.

107. Defendant S. HARIRI grabbed Plaintiff DOE 2 with so much force that she fell onto the bed in a seated position. Plaintiff DOE 2 immediately attempted to stand; however, Defendant S. HARIRI maintained a forceful grip on Plaintiff DOE 2's arm and demanded that she "tell him a story."

108. Plaintiff DOE 2 was overcome with fear and anxiety as she stammered through a conversation with Defendant S. HARIRI.

109. As Plaintiff DOE 2 attempted to stand and exit the room, Defendant S. HARIRI instructed Plaintiff DOE 2 to kiss him goodnight. Plaintiff DOE 2 refused.

110. Defendant S. HARIRI became irate and forcefully pulled her towards him.

111. Plaintiff DOE 2 feared for her safety and immediately pulled away, breaking Defendant S. HARIRI's grip on her arm, stood up, and swiftly left the room.

112. During the flight back to Paris from Washington, D.C., Defendant S. HARIRI continued to make inappropriate and unwelcome sexual advances towards Plaintiff DOE 2.

113. Once again, Defendant S. HARIRI instructed Plaintiff DOE 2 to bring him water in his bedroom. This time when Plaintiff DOE 2 entered the room, Defendant S. HARIRI was waiting by the door. Defendant S. HARIRI immediately shut the door after Plaintiff DOE 2 entered.

114. Plaintiff DOE 2 felt a wave of anxiety as she anticipated that Defendant S. HARIRI would attempt to sexually assault her.

115. Defendant S. HARIRI violently slammed Plaintiff DOE 2 against the bedroom wall, pinned her hands above her head, and forcefully kissed her. Defendant S. HARIRI forced his tongue into Plaintiff DOE 2's mouth and placed his left hand up her skirt. Defendant S. HARIRI forcefully rubbed Plaintiff DOE 2's vagina very hard over her tights and underwear.

116. Plaintiff DOE 2 tried to push Defendant S. HARIRI off but was unable to escape from Defendant S. HARIRI's hold.

117. Defendant S. HARIRI proceeded to rip Plaintiff DOE 2's tights to get under her underwear.

118. Plaintiff DOE 2 panicked and managed to push Defendant S. HARIRI off her.

119. Plaintiff DOE 2 then grabbed the door handle and ran out of the room.

120. Plaintiff DOE 2 felt violated and humiliated by Defendant S. HARIRI's unwelcome sexual assault.

121. Plaintiff DOE 2 intentionally avoided Defendant S. HARIRI for the rest of the flight.

122. Upon landing, Defendant S. HARIRI left the aircraft without acknowledging Plaintiff DOE 2 or what had happened.

123. A few days after that flight, Plaintiff DOE 2 was informed that Defendant S. HARIRI had requested that she be moved to work on his aircraft as a permanent crew member.

124. Plaintiff DOE 2 informed Defendant CONLON that she did not want to be moved and wished to never work on Defendant S. HARIRI's aircraft ever again.

125. Despite Plaintiff DOE 2's pleas, Defendant CONLON informed Plaintiff DOE 2 that "nobody says no to [Defendant S. HARIRI] darling."

126. Against her wishes, Plaintiff DOE 2 was forced to continue to work on Defendant S. HARIRI's aircraft.

127. Immediately thereafter, she witnessed Defendant S. HARIRI assault other female crew members.

128. On nearly every flight, Plaintiff DOE 2 was sexually assaulted by Defendant S. HARIRI in some manner.

129. On one occasion, shortly after takeoff on a flight from New York to Washington, Defendant S. HARIRI demanded that Plaintiff DOE 2 bring him an espresso to his bedroom. Plaintiff DOE 2 requested that someone else bring him the espresso; however, she was told that Defendant S. HARIRI had requested her specifically.

130. Upon entering the bedroom, Defendant S. HARIRI locked the door. Plaintiff DOE 2 was overcome by anxiety. Before she could turn to leave, Defendant S. HARIRI grabbed Plaintiff DOE 2 and forced her onto the bed. Defendant S. HARIRI began aggressively kissing Plaintiff DOE 2 while groping her breasts and vagina. Plaintiff DOE 2 attempted to resist and informed Defendant S. HARIRI to stop as she needed to return to work. Defendant S. HARIRI

disregarded Plaintiff DOE 2's pleas and positioned himself on top of Plaintiff DOE 2, using his weight to prevent her from getting up.

131.    While on top of Plaintiff DOE 2, Defendant S. HARIRI pulled at Plaintiff DOE 2's shirt and ripped her tights off. Defendant S. HARIRI violently and forcibly raped Plaintiff DOE 2. Moreover, Defendant S. HARIRI ejaculated inside of Plaintiff DOE 2. Upon information and belief, Defendant S. HARIRI was not wearing a condom. After raping Plaintiff DOE 2, Defendant S. HARIRI instructed Plaintiff DOE 2 to return to work – as if nothing happened. Plaintiff was distraught and in a state of shock.

132.    As Plaintiff DOE 2 emerged from Defendant S. HARIRI's bedroom, her female supervisor, RENEE, instructed Plaintiff DOE 2 to take a ten minute break and change her tights. Plaintiff DOE 2 was appalled by Defendants' conscious disregard for her well-being.

133.    After Plaintiff DOE 2 changed her clothes, Defendant S. HARIRI instructed Plaintiff DOE 2 to massage his shoulders while he played cards with other passengers. Plaintiff DOE 2 felt demeaned and degraded.

134.    Plaintiff DOE 2 was also forced to witness Defendant S. HARIRI grab her female colleagues' buttocks and/or breasts, rip their blouses to expose their bras, and rub his genitals on the female staff as they passed him.

135.    Plaintiff DOE 2 also became aware that on almost, if not, every flight Defendant S. HARIRI asked one of the female crew to bring him water in his bedroom. Plaintiff DOE 2 was informed by her colleagues that upon doing so, as he had done with her, Defendant S. HARIRI forced himself on them, kissed and groped them.

136.  In or around October 2008, DOE 1 (together with another female employee of Saudi Oger) complained in-person to Defendant KOLAGHASSI regarding S. HARIRI's unwelcome sexual advances and sexual assaults.

137.  Despite her complaint, KOLAGHASSI failed to take any corrective or remedial action.

138.  One of the most serious incidents of sexual assault perpetrated by Defendant S. HARIRI against Plaintiff DOE 2 took place around Christmas time in 2008.

139.  The passengers on the flight had a Christmas party, for which for the female crew were required to dress in "sexy" Santa costumes purchased by Saudi Oger.

140.  During the party, the guests consumed copious amounts of alcohol. The female crew were also strongly encouraged to consume alcohol and/or narcotics, as they had been on many occasions before and after.

141.  Upon information and belief, Defendant S. HARIRI encouraged the consumption of such substances to make the female staff more willing to engage in sexual acts with him.

142.  Later in the evening, Defendant S. HARIRI ordered Plaintiff DOE 2 to bring him water to his bedroom.

143.  Once Plaintiff DOE 2 was in the room, Defendant S. HARIRI immediately shoved Plaintiff DOE 2 onto the bed. Defendant S. HARIRI then pinned Plaintiff DOE 2's arms down on the bed, lifted her legs, ripped her tights, pulled her underwear to the side and forcefully penetrated her vagina with his penis.

144.  Plaintiff DOE 2 was shocked, humiliated, and felt extremely violated.

145.  Plaintiff DOE 2 was frozen in fear and did not move while Defendant S. HARIRI violently raped her. Defendant S. HARIRI ejaculated inside of Plaintiff DOE 2 and did not use a condom.

Plaintiff DOE 2 feared that Defendant S. HARIRI had infected her with a sexually transmitted disease and that she may become pregnant.

146.     Defendant S. HARIRI acted as if nothing had happened and got up to take a shower. Plaintiff DOE 2 immediately left the room and went back to her shift, still in shock and physical pain.

147.     As a result, Plaintiff DOE 2 was in a great deal of pain and was overcome by severe depression and anxiety.

148.     Defendant S. HARIRI's egregious conduct dehumanized Plaintiff DOE 2 and shattered her confidence and trust in others.

149.     Plaintiff DOE 2 was raped on at least two more occasions by Defendant S. HARIRI.

150.     On one occasion, Defendant S. HARIRI also penetrated Plaintiff DOE 2 anally.

151.     On one occasion while flying from Washington to New York, after the plane had landed in New York Defendant S. HARIRI instructed Plaintiff DOE 2 to bring his coat into the bedroom. Again, once inside the bedroom Defendant S. HARIRI locked the door and forcefully pushed Plaintiff DOE 2 against the wardrobe. Defendant S. HARIRI began aggressively kissing Plaintiff DOE 2 and forcefully grabbed her vagina. Plaintiff DOE 2 whimpered, "Please stop." Defendant S. HARIRI instructed Plaintiff DOE 2, "You are mine. I can do whatever I want." Plaintiff DOE 2 informed Defendant S. HARIRI that she needed to leave as they were preparing to disembark the plane. Defendant S. HARIRI grabbed Plaintiff DOE 2 by the throat, choked her, and forcefully pressed her harder into the wardrobe. Defendant S. HARIRI said, "You're not going anywhere," and aggressively kissed Plaintiff DOE 2. Defendant S. HARIRI's grip was so forceful that Plaintiff DOE 2 began struggling to breath and feared for her safety. As Plaintiff DOE 2 began gasping for air, Defendant S. HARIRI smirked with

twisted enjoyment as he relished in watching Plaintiff DOE 2 suffer. Finally, Defendant S. HARIRI released his grip of Plaintiff DOE 2's throat and pushed her away. Plaintiff DOE 2 was humiliated and began to cry.

152. On another occasion, Defendant S. HARIRI sexually assaulted Plaintiff DOE 2 on Defendant BAHAA's plane after taking off from John F. Kennedy Airport in New York.

153. Specifically, Defendant S. HARIRI pushed Plaintiff DOE 2 into the bedroom and forced her to perform oral sex on him.

154. Plaintiff DOE 2 attempted to resist but she was physically unable to do so.

155. Plaintiff DOE 2 felt too afraid to fight back or to speak out about the sexual assaults and abuse, due the power Defendant S. HARIRI held, as both the Lebanese Prime Minister and as her employer.

156. In July 2009 Defendant S. HARIRI sexually assaulted Plaintiff DOE 2 on a flight from London, while the plane was on the runway at London's Luton Airport.

157. Defendant S. HARIRI was angry with Plaintiff DOE 2 on the flight, due to a false tabloid story concerning her and a male celebrity.

158. When Defendant S. HARIRI boarded the flight, he demanded that Plaintiff DOE 2 speak with him in his bedroom immediately.

159. When Plaintiff DOE 2 entered the bedroom, Defendant S. HARIRI shut the door, forcefully grabbed Plaintiff DOE 2 by her throat and violently slammed Plaintiff DOE 2 against the wall by her throat. Defendant S. HARIRI proceeded to forcefully grab Plaintiff DOE 2's vagina with his other hand. Defendant S. HARIRI angrily asked Plaintiff DOE 2, "[w]hat the fuck were you doing with him?!" and "[d]id you fuck him?!" Plaintiff DOE 2 informed Defendant S. HARIRI that the story had been made up.

160.   Defendant S. HARIRI then shoved his tongue into Plaintiff's DOE 2's mouth and rubbed his erect penis against her crotch area. Plaintiff DOE 2 tried to push Defendant S. HARIRI off and demanded that he stop. Defendant S. HARIRI refused and pushed Plaintiff DOE 2 even harder against the wall. Defendant S. HARIRI did not permit DOE 2 to exit the bedroom.

161.   Defendant S. HARIRI only stopped when another crew member knocked on the door to tell him that they needed to prepare for departure. Defendant S. HARIRI then loosened his grip and Plaintiff DOE 2 immediately left the room. After the flight, Plaintiff DOE 2's female colleague, informed Plaintiff DOE 2 that she too had been sexually assaulted by Defendant S. HARIRI during the flight.

162.   Around 2010, Plaintiff DOE 2 was told by Defendant CONLON, without any warning or just cause, that she had been fired from Saudi Oger.

163.   Notably, Defendants terminated DOE 2 mere hours after she had requested to spend Christmas with her then boyfriend.

164.   After her unlawful termination from Saudi Oger, Plaintiff DOE 2 was offered a job trial with another aviation company on one of their planes. Shortly before her trial was to begin, Plaintiff DOE 2 was abruptly notified that it was cancelled.

165.   Upon information and belief, Defendant CONLON, at the instruction of Defendants, gave false information to the trial company in order to prevent Plaintiff DOE 2 from working in the aviation industry.

**STATEMENT OF FACTS RELATED TO BOTH PLAINTIFFS**

166.   Plaintiffs, and other female staff, were both, on numerous occasions, weighed by Defendant CONLON. Upon information and belief, this was done at the instruction of Defendants to ensure that the women remained "physically attractive."

167.   Defendant S. HARIRI and Defendant CONLON, on multiple occasions, made comments about various female aviation staff's weight or size. This included but is not limited to referring to female staff as "fat." These comments were degrading and humiliating.

168.   Defendant S. HARIRI and Defendant CONLON also often suggested or demanded that Plaintiffs and other female staff get plastic surgery.

169.   Defendant S. HARIRI prohibited his female aviation staff from having boyfriends. Upon information and belief, Defendant S. HARIRI believed that if they had boyfriends, they would be less willing to engage in sexual relations with him.

170.   While in New York, Defendant S. HARIRI, throughout the course of Plaintiffs' employment with Saudi Oger, sent sexually explicit text messages to Plaintiffs and requested that the engage in "phone sex" via text and/or send him "sexy" and nude photos. On several occasions Defendant S. HARIRI requested that Plaintiffs meet up with him at his hotel.

171.   At first, Plaintiffs attempted to decline Defendant S. HARIRI's requests. However, immediately after they declined to engage with him, they noticed that Defendant S. HARIRI's sexual assaults intensified, and Defendant S. HARIRI became physically violent with them. As such, Plaintiffs reluctantly began to engage and comply with Defendant S. HARIRI's requests for text messages.

172.   Plaintiffs received these text messages during their time off and while they worked. This included when they were in New York overnight after having flown with Defendant S. HARIRI on his aircraft.

173.   Plaintiffs, over the course of their employment, noticed that Defendant S. HARIRI prohibited male aviation crew to work on his aircraft. The few times that a male had to work on the aircraft, they were regulated to the galley and were not permitted to enter the cabin area.

174. Once Defendant S. HARIRI's aircraft landed, but prior to disembarking from his aircraft, throughout the course of their employment, Defendant S. HARIRI required Plaintiffs (and other female aviation staff) to line up and kiss Defendant S. HARIRI before disembarking the aircraft.

175. Additionally, Defendants' female aviation staff's phones were tapped so that their location was known at all times and their messages could be read.

176. Plaintiffs throughout their employment with Saudi Oger, were required to submit to routine STD testing.

177. Upon information and belief, this was so that S. HARIRI could sexually assault Saudi Oger's female staff without fear of contracting a sexually transmitted disease.

178. On many, if not all, of the flights that Plaintiffs worked, there were an inadequate number of seats in which the aircrafts crew members could secure themselves.

179. This caused Plaintiffs to be fearful for their safety and lives.

180. Furthermore, on a number of occasions, Plaintiffs were required to staff a "decoy" plane.

181. Upon information and belief, S. HARIRI flew on a different plane and had a staffed plane fly somewhere else as a decoy to protect himself.

182. This put Plaintiffs, and other Saudi Oger staff members, lives at risk and caused them substantial fear and emotional distress.

183. The above are just some of the examples of unlawful conduct to which the Defendants subjected Plaintiffs to on an ongoing and continuous basis.

184. As a result of Defendants' actions against Plaintiffs, Defendants caused Plaintiffs to be physically violated, humiliated, degraded, victimized, embarrassed, and emotionally distressed.

185.    As a result of Defendant S. HARIRI's rapes, sexual assaults, false imprisonments, sexual harassment, and negligence, Plaintiffs have suffered and continue to suffer numerous physical and mental ailments including, but not limited to Post-Traumatic Stress Disorder, Major Depressive Disorder, Acute Anxiety Disorder, and panic attacks. Plaintiff DOE 2, as a result of Defendant S. HARIRI's conduct suffered from Colitis flare-ups.

186.    Moreover, as a result of Defendants BAHAA, AYMAN, MOHAMMED, KOLAGHASSI and CONLON's conduct, whom knowingly and intentionally aided and abetted Defendant S. HARIRI's criminal acts, Plaintiffs have suffered and continue to suffer numerous physical and mental ailments including, but not limited to Post-Traumatic Stress Disorder, Major Depressive Disorder, Acute Anxiety Disorder, panic attacks, and trust issues.

187.    Plaintiffs claim a continuous practice of discrimination and claim a continuing violation and makes all claims herein under the continuing violations doctrine.

188.    At all times material, Defendants acted with deliberate indifference to the unlawful conduct Plaintiffs were subjected to.

189.    As a result of Defendants' continued unlawful and egregious acts perpetrated against Plaintiffs, they suffered numerous injuries including physical, economic, and emotional damages.

190.    As a result of the acts and conduct complained of herein, Plaintiffs have suffered and will continue to suffer the loss of income, the loss of wages, benefits and other compensation, which such employment entails. Plaintiffs have also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

191.   As Defendants' conduct has been malicious, reckless, willful, outrageous, and conducted with full knowledge of the law, Plaintiffs demand punitive damages be imposed on the Defendants, jointly and severally.

192.   Defendants' actions constituted a continuing violation of the applicable federal and state laws.

## AS A FIRST CAUSE OF ACTION
## FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (asserted by Plaintiffs against Defendant S. HARIRI)

193.   Plaintiffs repeat, reiterate and reallege each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

194.   Defendants' behavior was extreme and outrageous to such extent that the action was atrocious and intolerable in a civilized society.

195.   Defendants' conduct was so outrageous in character and extreme in degree as to go beyond all possible bounds of decency.

196.   Defendants caused Plaintiffs to fear for their own safety.

197.   Defendants' breach of their duties to Plaintiffs caused them to suffer numerous injuries as set forth herein.

198.   As a result of Defendants' acts, Plaintiffs have been damaged in an amount to be determined at the time of trial.

## AS A SECOND CAUSE OF ACTION
## FOR GENDER MOTIVATED VIOLENCE PROTECTION ACT
### (asserted by Plaintiffs against Defendant S. HARIRI)

199.   Plaintiffs repeat, reiterate and reallege each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

200.   N.Y. ADC. LAW § 8-903 states in relevant part "For purposes of this chapter:

a. "Crime of violence" means an act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law or that would constitute a misdemeanor or felony against property as defined in state or federal law if the conduct presents a serious risk of physical injury to another, whether or not those acts have actually resulted in criminal charges, prosecution, or conviction.

b. "Crime of violence motivated by gender" means a crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender.

201.   N.Y. ADC. LAW § 8-904 : NY Code – Section 8-904: Civil Cause of Action states in relevant part "Except as otherwise provided by law, any person claiming to be injured by an individual who commits a crime of violence motivated by gender as defined in section 8-903 of this chapter, shall have a cause of action against such individual in any court of competent jurisdiction for any or all of the following relief: 1. compensatory and punitive damages; 2. injunctive and declaratory relief; 3. attorneys' fees and costs; 4. such other relief as a court may deem appropriate."

202.   Defendant S. HARIRI's conduct constitutes crimes of "violence motivated by gender" under The Victims of Gender-Motivated Violence Protection Act ("VGMVPA").

203.   As a result of Defendant S. HARIRI's acts, Plaintiffs have been damaged in an amount to be determined at the time of trial.

### AS A THIRD CAUSE OF ACTION
### FOR ASSAULT AND BATTERY
### (AGAINST DEFENDANT S. HARIRI)

204.   Plaintiffs repeat, reiterate and reallege each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

205.    The aforesaid occurrences and resultant injuries to Plaintiffs were caused by reason of the intent, carelessness and recklessness of Defendant S. HARIRI, did suddenly and without provocation, did physically rape, assault and batter Plaintiffs, herein causing Plaintiffs to sustain damages; in that Defendant S. HARIRI did conduct himself in a wanton, willful, reckless and heedless manner without regard to the safety of the Plaintiffs herein; in that said Defendant was physically abusive; in behaving in a disorderly manner; in using unnecessary, excessive and unlawful touching against the plaintiff; in willfully and maliciously assaulting and battering the Plaintiff herein.

206.    § 214-j of the Civil Practice Law and Rules provides as follows: certain sexual offense actions. Every civil claim or cause of action brought against any party alleging intentional or negligent acts or omissions by a person for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense as defined in article one hundred thirty of the penal law committed against such person who was eighteen years of age or older, […] which is barred as of the effective date of this section because the applicable period of limitation has expired, […] is hereby revived, and action thereon may be commenced not earlier than six months after, and not later than one year and six months after the effective date of this section. In any such claim or action, dismissal of a previous action, ordered before the effective date of this section, on grounds that such previous action was time barred, and/or for failure of a party to file a notice of claim or a notice of intention to file a claim, shall not be grounds for dismissal of a revival action pursuant to this section.

207.    As a result of Defendant S. HARIRI's acts of assault and battery, Plaintiffs have been damaged in an amount to be determined at the time of trial.

## AS A FOURTH CAUSE OF ACTION
## FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
## (AGAINST ALL DEFENDANTS)

208.    Plaintiffs repeat, reiterate and reallege each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

209.    Defendants' behavior was extreme and outrageous to such extent that the action was atrocious and intolerable in a civilized society.

210.    Defendants had a duty of care to Plaintiffs to not assault or rape them during the course of their employment.

211.    Defendants violated that duty.

212.    Defendants' breach of duty caused Plaintiffs to suffer numerous injuries as set forth herein.

213.    As a result of Defendants' acts, Plaintiffs have been damaged in an amount to be determined at the time of trial.

## AS A FIFTH CAUSE OF ACTION
## FOR FALSE IMPRISONMENT
## (AGAINST DEFENDANT S. HARIRI)

214.    Plaintiffs repeat, reiterate and reallege each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

215.    Defendant S. HARIRI detained Plaintiffs for a long period of time.

216.    Defendant S. HARIRI detained Plaintiffs with the express purpose of engaging in unwanted and unwelcome sexual activity with Plaintiffs.

217.    Defendant S. HARIRI's detainment of Plaintiffs was without Plaintiffs' consent.

218.    Defendant S. HARIRI's detainment of Plaintiffs was unlawful because he utilized the detainment to sexually assault them.

## AS A SIXTH CAUSE OF ACTION
## FOR AIDING & ABETTING
## <u>UNDER NEW YORK STATE LAW</u>
### (asserted by Plaintiffs against all Defendants)

219.   Plaintiffs repeat, reiterate and reallege each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

220.   New York State Executive Law §296(6) further provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

221.   Defendants engaged in an unlawful discriminatory practice by aiding, abetting, compelling and/or coercing the discriminatory behavior as stated herein.

## AS A SEVENTH CAUSE OF ACTION
## FOR RETALIATION
## <u>UNDER NEW YORK STATE LAW</u>
### (asserted by Plaintiffs against ALL Defendants)

222.   Plaintiffs repeat, reiterate and reallege each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

223.   New York State Executive Law § 296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

224.   Defendants engaged in an unlawful discriminatory practice by retaliating against Plaintiffs with respect to the terms, conditions or privileges of their employment because of their opposition to the unlawful employment practices of Defendants.

225.   Defendants violated the above and Plaintiffs suffered numerous damages as a result.

**AS AN EIGHTH CAUSE OFACTION**
**FOR DISCRIMINATION**
**UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**
**(asserted by Plaintiffs against ALL Defendants)**

226.    Plaintiffs repeat, reiterate and reallege each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

227.    The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienate or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

228.    Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, by creating and maintaining discriminatory working conditions and a hostile work environment, and otherwise discriminating against the Plaintiffs because of their sex/gender.

229.    Plaintiffs hereby make a claim against Defendants under all of the applicable paragraphs of New York City Administrative Code Title 8.

230.    Defendants violated the above and Plaintiffs suffered numerous damages as a result.

**AS A NINTH CAUSE OF ACTION**
**FOR AIDING AND ABETTING**
**UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**
**(asserted by Plaintiffs against ALL Defendants)**

231.    Plaintiffs repeat, reiterate and reallege each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

232. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

233. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

234. Defendants violated the above and Plaintiffs suffered numerous damages as a result.

**AS A TENTH CAUSE OF ACTION**
**FOR DISCRIMINATION**
**UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**
**(asserted by Plaintiffs against ALL Defendants)**

235. Plaintiffs repeat, reiterate and reallege each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

236. Section 8-107(19), entitled Interference with protected rights provides that:

"It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section."

237. Defendants violated the above section as set forth herein and Plaintiffs suffered numerous damages as a result.

**WHEREFORE**, Plaintiffs respectfully requests that this Court enter judgment in an amount which exceeds the jurisdiction of all lower courts for all damages including but not limited to compensatory damages, punitive damages, statutory damages, attorney's fees, costs, interest and all other damages as are just and proper to remedy Defendant's unlawful sexual abuse and rape of Plaintiffs.

## JURY DEMAND

Plaintiff demands a trial by jury as to all issues so triable. Plaintiff is entitled to trial preference in accordance with 219-e.

## DEMAND TO PRESERVE EVIDENCE

The Defendants are hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiffs' employment, to their claims and their claims to damages, to any defenses to same, including, but not limited to electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.

Dated: March 20, 2023
New York, New York

**DEREK SMITH LAW GROUP, PLLC**
*Attorneys for Plaintiffs*

By: _____
Zack Holzberg, Esq.
Derek Smith, Esq.
One Penn Plaza, Suite 4905
New York, New York 10119
(212) 587-0760